RANSOME ROWE & another *vs.* INHABITANTS OF PEABODY。
INHABITANTS OF PEABODY *vs.* UNITED STATES FIDELITY
AND GUARANTY COMPANY.

Middlesex.    November 9, 1910. — January 3, 1911.

Present: KNOWLTON, C. J., MORTON, LORING, SHELDON, & RUGG, JJ.

*Contract,* Performance and breach.    *Municipal Corporations.    Bond.    Surety.*
*Damages,* In contract.    *Interest.*

One who contracts absolutely to do a certain thing which is lawful is not to be ex-
cused for non-performance merely because performance originally was or has
become impossible.

A contractor agreed in writing with a town to construct a tunnel of the length of
fifteen hundred and fifty feet to hold a masonry conduit thirty inches in diameter
"by the use of timber props, roof supports and lagging." The specifications
contained the statement that the underground plot had not been investigated
and that the committee acting for the town expressly denied any responsibility
for its character. The contract provided that the contractor should bear all
loss resulting to him from the character of the work or because of the nature
of the ground being "different from what was estimated or expected." The
character of the soil through which the tunnel was to be constructed proved
to be such that the construction of the tunnel was impossible unless at a cost to
the contractor greatly exceeding the contract price. The contractor on discov-
ering the difficulties refused to perform his contract. *Held,* that the practical
impossibility of the performance of the contract did not excuse the contractor
from his obligation to construct the tunnel according to the specifications for the
price named, and that he must respond in damages for his failure to do so.

Where a committee on water supply of a town consisting of seven members, of whom
one is the chairman, have authority to make a contract for the construction of a
tunnel to hold a conduit for the waterworks of the town, and make such a con-
tract, which the contractor afterwards abandons on finding the difficulties so
great that it can be performed only at an excessive loss to him, no waiver of or
change in the terms of the contract can be made in behalf of the town by the
chairman of the committee except so far as authority to do this has been given
to him by his associates, who together with the chairman have power to act for
the town only as a collective body.

In an action by a town against the surety on the bond of a contractor, who had
made a contract to construct a tunnel to hold a conduit thirty inches in diame-
ter for the waterworks of the town, which contract he afterwards had abandoned
on finding the difficulties so great that the construction of the tunnel was im-
possible except at a cost to him greatly exceeding the contract price, it ap-
peared, that the method of construction required by the contract was by the
use of timber supports, and that after the contractor abandoned the contract
the town completed the tunnel by pneumatic construction at a necessary cost
of nearly $48,000 more than the contract price for the timber construction, and
that it was necessary in order to use the pneumatic method of construction to

make the diameter of the tunnel forty-eight inches instead of thirty inches, although the greater diameter was of no advantage to the town after the tunnel was finished. The pneumatic method of construction was essentially different from that originally contracted for, but it was the cheapest and the most expeditious method of constructing the tunnel. *Held*, that the town, not having received from the contractor the tunnel which he had agreed to furnish, was entitled to hold him and the surety on his bond liable for the necessary cost of obtaining such a tunnel in excess of the original contract price; that the town had obtained such a tunnel as it needed at the smallest possible cost, which was much less than would have been required to procure one constructed in the manner contracted for, and the fact that in doing this the town had been forced to acquire a tunnel somewhat larger than that contracted for and different in its method of construction did not diminish the damages to which the town was entitled, as the larger tunnel served the purpose of the town no better than one of the size specified in the contract would have done and it could not have been built smaller by the method of construction that was used, this method having lessened the burden of the damages for which the contractor and the surety on his bond were liable.

Where, in an action against the surety on a bond given to secure the faithful performance of a contract, the penalty of the bond is less in amount than the damages which in equity and good conscience the plaintiff is entitled to recover, interest should be allowed upon the amount of such penalty.

TWO ACTIONS OF CONTRACT, the first action by Ransome Rowe and Bonfiglio Perini, contractors, against the town of Peabody on an account annexed for work, labor, materials and machinery alleged to have been furnished to the defendant in the construction of a tunnel for its waterworks, and the second action by the town of Peabody against the United States Fidelity and Guaranty Company, a corporation, as surety on a bond given by the plaintiffs in the first action to secure their performance of a contract in writing with the town to construct a tunnel to contain a conduit for the waterworks of the town. Writs dated respectively January 4, 1907, and February 15, 1907.

The answer of the town in the first case set up the defense that all the work done and all the materials furnished by the plaintiffs were so done and furnished under a contract in writing which the plaintiffs had failed to perform and afterwards expressly abandoned.

In the Superior Court the cases were tried together before *Fox*, J. The facts which appeared in evidence or could have been found upon the evidence are stated in the opinion.

The following extracts from the specifications of the contract made by the plaintiffs in the first case for the building of the tunnel relate to matters mentioned in the opinion.

From article six: " Sec. 2. The work to be done consists in excavating and constructing masonry in tunnel for a distance of fifteen hundred and fifty feet. . . .

" The contractor shall furnish all materials and labor, except as otherwise specified, necessary to complete the work in accordance with the terms of this contract and the requirements of the engineer hereunder.

" Sec. 3. The nature of the underground plot has not been investigated and the committee expressly denies any responsibility for its character."

From article twenty-three: " The contractor shall take all responsibility of the work and shall take all precautions for preventing injuries to persons and property about the work; shall bear all losses resulting to him on account of the amount or character of the work, or because of the nature of the ground, in or on which the work is done is different from what was estimated or expected, or on account of the weather, elements, or other causes."

In the first case, brought by the contractors, the following stipulation was filed :

" It is agreed in the above entitled cause that the actual cost to the town of Peabody for constructing the Suntaůg Aqueduct, in connection with which the contract between Rowe and Perini with the town of Peabody was made, was $47,805.12 in excess of the contract price for such work as the said Rowe and Perini agreed to perform under the contract, and if the defendant is entitled to damages by way of recoupment against the plaintiff, then the amount thereof shall be assessed at $47,805.12, but it is not conceded on the part of Rowe and Perini that the cost of performing the work by the town is material."

In the second case, brought by the town against the surety on the bond given by the contractors, the following stipulation was filed :

" It is agreed that the above entitled action may be transferred to the county of Middlesex, and may be tried at the same time with the case entitled Ransome Rowe et al. v. Town of Peabody.

" It is further agreed that if the town of Peabody is entitled to recoup in the said case of Ransome Rowe et al. v. Town of Peabody, the cost to the town for constructing the Suntaug Aqueduct,

which it is agreed was $47,805.12, in excess of the contract price for such work as was covered by the contract, and if the defendant in this action is liable on the bond sued on therefor to the extent of said bond, that said amount of $47,805.12 may be apportioned first by way of recoupment in the above case of Ransome Rowe *et al. v.* Town of Peabody and thereafter be recovered in this action."

In the first case the judge made the following rulings requested by the plaintiffs:

"1 a. The contract of July 25, 1905, required as essential conditions the construction of a tunnel thirty inches in diameter by the use of timber props, roof supports and lagging. It was not a contract for constructing a suitable tunnel by whatever method should become available."

" 2. Under that contract neither the engineer nor the town water committee had power to require the contractors, without their consent, to construct a tunnel by pneumatic process forty-eight inches in diameter. Such requirement would not be a mere variation in form and dimensions which the contractors must adopt receiving compensation under the ' extra work ' clause. but would be the substitution of a different contract."

The judge refused to make the other rulings requested by the plaintiffs in the first case, which were as follows:

" 1 b. The contractors were not required at all events to construct a tunnel at least thirty inches in diameter. If it was or became impossible to construct a tunnel of substantially thirty inches diameter by timber method, such impossibility is an excuse to both parties, unless one of the parties insured that it could be done.

" 1 c. Neither the town nor the contractors insured or guaranteed that a thirty inch timber tunnel could be built on the line and grade of the plans."

" 3. If the jury find that the construction of a thirty inch timber tunnel became impossible, upon cessation of work thereon, neither party would have a right of action against the other for breach of contract, but the contractors would have a right to be paid the reasonable value of their work and materials in excavating the shafts and excavating for the gate house.

" 4. Whether or not it became impossible to construct a thirty

inch timber tunnel, it is a question for the jury to determine whether in October and November, 1905, both parties waived their possible contentions under the contract of July 25, 1905, and went on with the work of constructing a water supply system under a new arrangement.

"5. If the jury find that the obligations of the contract of of July 25, 1905, were waived by both parties, it is a question for the jury to determine whether or not there was any definite agreement between the water committee and Rowe and Perini as to payment for this previous labor and materials in excavating the shafts and gate house foundations, and for this machinery and tools; and if so, what that agreement was.

"6. If the jury find that the obligations of the contract of July 25, 1905, were waived and that there was no definite agreement as to such payment, Rowe and Perini are entitled to reasonable compensation for such labor, materials, machinery and tools.

"7. The performance of the substituted arrangement abrogated the original contract, since there is no evidence that the new contract was not intended to be a discharge of claim that contractors had broken the contract.

"8. It is a question for the jury whether the mutual obligations of the old contract were waived by the parties in entering into the new arrangement which Rowe acted upon."

In the second case the defendant asked the judge to make the following rulings:

"1. Upon all the evidence the plaintiff is not entitled to recover upon the bond in this case.

"2. The town of Peabody by its dealings with Rowe and Perini in October, 1905, waived all its rights, if any, against the United States Fidelity and Guaranty Company.

"3. If the jury find that it was impossible to build a thirty inch timber tunnel as contemplated in the contract of July 25, 1905, by reason of such impossibility the United States Fidelity and Guaranty Company came under no liability to the town of Peabody on its bond.

"4. If the court rules that the town of Peabody is entitled to recover from the United States Fidelity and Guaranty Company upon said bond there is no evidence of damage to the

town by reason of any alleged breach of said bond. The cost of completing the Suntaug aqueduct after October 17, 1905, is not the measure of damages."

The judge refused to make any of these rulings.

In the first case the judge ordered a verdict for the defendant. In the second case he ordered a verdict for the plaintiff in the sum of $5,540, which was the amount of the penalty of the bond with interest. The plaintiffs in the first case and the defendant in the second case alleged exceptions.

*C. F. Choate, Jr.,* for the plaintiffs in the first case and the defendant in the second case.

*B. N. Johnson,* (*S. H. Donnell* with him,) for the town of Peabody.

SHELDON, J. The plaintiffs in the first action, hereinafter called the contractors, made in July, 1905, an agreement with the town of Peabody for the building of a tunnel from Suntaug Lake for a distance of fifteen hundred and fifty feet, and for the laying of certain pipe and the performance of other specified work. The contractors were to do all the work and supply the materials, so as to furnish to the town a completed tunnel with all its equipment, and were to be paid fixed prices for the different parts of what they were to do. They gave to the town a bond with the defendant in the second action as surety, conditioned for their faithful performance of the contract. The work was to be a timber supported tunnel, in which was to be constructed a masonry conduit thirty inches in diameter. The judge instructed the jury that the contract required as essential conditions "the construction of a tunnel thirty inches in diameter by the use of timber props, roof supports and lagging. It was not a contract for constructing a suitable tunnel by whatever method should become available." He further ruled that under the contract the officers acting for the town had no power "to require the contractors, without their consent, to construct a tunnel by pneumatic process forty-eight inches in diameter. Such requirement would not be a mere variation in form and dimensions which the contractors must adopt, . . . but would be the substitution of a different contract." Both of these rulings were made at the request of the contractors and apparently without objection by any party. They must now be taken

as correct.  *MacKnight Flintic Stone Co.* v. *New York,* 160 N. Y. 72.

The contractors began to construct the tunnel as required by the contract, but presently found that owing to the nature of the soil there were serious difficulties, so great, they contended, as to make the construction in that way practically impossible, and certainly so great as to make it impracticable without a very large and disproportionate expense, such as they were not able to incur.  Finally, on October 27, after some negotiations with the engineer and with the committee of the town, which so far as necessary will be referred to hereafter, the contractors sent to the committee a letter formally abandoning the contract.  The town then completed the tunnel by what is called the pneumatic construction, which necessarily involved a cost of $47,805.12 in excess of the contract price.  It was also necessary under this mode of construction to make the diameter of the tunnel forty-eight inches instead of thirty inches.  This mode of construction, as already pointed out, was essentially different from that originally contracted for ; but it does not seem to have been disputed that if not the only practicable method, it was at least the cheapest, most expeditious and most economical method by which the tunnel could be constructed.

The first contention made in behalf of the contractors is that the performance of their contract was impossible, or at least that it might have been found by the jury to be impossible, and that for this reason the contract was no longer binding upon the parties.  They argue that a contract to build a particular tunnel of specified dimensions by a described method of construction is like a contract to ship goods by a certain steamer, or to sell potatoes to be raised upon certain specified land, or to account for the proceeds of butter to be made in a certain factory, or to build a bridge by the caisson method, — in each of which cases it has been held that the continued existence of the subject matter of the contract or the continued practicability of the essential details that are stipulated for is an implied condition of the continued validity of the agreement.  *Krell* v. *Henry,* [1903] 2 K. B. 740.  *Chandler* v. *Webster,* [1904] 1 K. B. 493.  *Howell* v. *Coupland,* 1 Q. B. D. 258.  *Stewart* v. *Stone,* 127 N. Y. 500.  *Buffalo & Lancaster Land Co.* v. *Bellevue Land &*

*Improvement Co.* 165 N. Y. 247. *Lovering* v. *Buckmountain
Coal Co.* 54 Penn. St. 291.   This is the same principle which we
recently considered in *Hawkes* v. *Kehoe*, 193 Mass. 419.   It has
frequently been applied in the courts.   See, besides the cases
already cited, *Angus* v. *Scully*, 176 Mass. 357 ; *Butterfield* v.
*Byron*, 153 Mass. 517 ; *Elliott* v. *Crutchley*, [1903] 2 K. B. 476 ;
*McKenna* v. *McNamee*, 15 Canada S. C. 311.   But the question
is as to the construction of the contract which the parties have
made.   This was recognized in most of the cases above cited.
One who chooses to contract absolutely for the performance of a
certain thing is not to be excused from such performance, in the
absence of any other ground, merely because it either was origi-
ally or has since become impossible of execution.   As was said
by Blackburn, J., in the leading case of *Taylor* v. *Caldwell*, 3 B.
& S. 826, 833, " where there is a positive contract to do a thing,
not in itself unlawful, the contractor must perform it or pay
damages for not doing it, although in consequence of unforeseen
accidents the performance of his contract has become unex-
pectedly burdensome or even impossible."   This also has been
frequently declared by the courts.   *Jones* v. *St. John's College*,
L. R. 6 Q. B. 115, 127.   *Paradine* v. *Jane*, Aleyn, 26.   *Atkinson*
v. *Ritchie*, 10 East, 530.   *Hills* v. *Sughrue*, 15 M. & W. 253.
*Harvey* v. *Murray*, 136 Mass. 377.   *Drake* v. *White*, 117 Mass.
10.   *Stees* v. *Leonard*, 20 Minn. 494.   As was said by the
present Chief Justice in *Butterfield* v. *Byron*, 153 Mass. 517, 520,
" the fundamental question . . . is, What is the true interpre-
tation of the contract ? "

In the case at bar the contract expressly stated that the nature
of the underground plot had not been investigated, and that the
committee of the town denied any responsibility for its character.
The contractors also agreed by the twenty-third article of the
contract to take all responsibility for the work and to bear all
losses resulting on account of its nature or character or because
of the nature of the ground being different from what was esti-
mated or expected.   The difficulties which it was asserted made
the prescribed mode of construction impossible arose wholly
from the character of the soil beneath the surface.   They were
warned that there might be such difficulties, and no one could
say in advance that these might not be very great, or even in-

superable.   But they chose to make their agreement an absolute
one, and the court cannot relieve them from the bargain which
they saw fit to make.   The case is well within the decisions.
*Boyle* v. *Agawam Canal Co.* 22 Pick. 381.   *Dermott* v. *Jones*,
2 Wall. 1.   *Eastman* v. *St. Anthony Falls Water-Power Co.* 24
Minn. 437.   *Thorn* v. *Mayor of London*, L. R. 9 Ex. 163 ;
L. R. 10 Ex. 112; 1 App. Cas. 120.   There are three English
cases, decided respectively in the House of Lords and in the
Court of Appeal, which resemble closely the case at bar.
*Jackson* v. *Eastbourne Local Board*, 2 Hudson, Building Con-
tracts, (3d ed.) 67 ; *Bottoms* v. *Lord Mayor of York*, 2 Ibid. 220.;
and *McDonald* v. *Mayor of Workington*, 2 Ibid. 240.   In the first
of these cases, Lord Esher said in the Court of Appeal: " When
a man is asked to tender upon specifications, he must inquire
whether it is possible for him to do the work which he engages
to do, and if he does not then find out that it is impossible, he is
not excused by reason that, from the difficulty of the works, it is
afterwards found impossible.   He has contracted to do it, and
must fulfil his contract."

We are clearly of opinion that these contractors were not
excused from the performance of their agreement by reason of
its alleged impossibility, but that they were bound either to
accomplish what they had promised to do or to respond in
damages for their failure.

But it is contended that the town did not choose to stand upon
its rights but waived performance by the contractors of the
unfortunate obligation into which they had entered, and that it
made a new arrangement with them, under which they were to
construct another and different tunnel.   The original contract,
it is contended, was annulled or rescinded by mutual consent,
and the parties now stand as if no such contract had been made.

It was competent for the parties to do this if they chose to do
so ; and under the circumstances of this case, considering the
changed relations of the parties and the proposed modifications
of the work to be done, there would be a sufficient consideration
for the abandonment of the original contract and the substitution
of a new arrangement.   *Munroe* v. *Perkins*, 9 Pick. 298.   *Rogers*
v. *Rogers & Brother*, 139 Mass. 440.   *Alden* v. *Thurber*, 149
Mass. 271.   *Thomas* v. *Barnes*, 156 Mass. 581.   *Stebbins* v.

*Conners Brothers Construction Co.* 202 Mass. 153. *Hanson &
Parker* v. *Wittenberg,* 205 Mass. 319.

Some efforts were made by the parties towards effecting a new
arrangement. In these, as in all matters respecting the con-
struction of the tunnel, the town acted through its committee on
water supply, which consisted of seven persons and of which one
Walker was chairman. Its power to bind the town was not dis-
puted. On September 29, 1905, after the development of the
conditions which impeded further progress under the terms of
the contract, Barbour, the engineer of the town, wrote a letter
to Walker, in which, besides stating these difficulties and the
possibility that the contractors might throw up their work, he
said: " In view of this possibility the question arises as to
whether it will not pay the town of Peabody to make some
arrangement with Rowe and Perini so that they can proceed
with the work. I am satisfied that they are as well able to do
this tunnel work as any one we could obtain. The cost to the
town will unquestionably be much greater than originally bid.
In considering any such idea it must be clearly borne in mind
that we cannot make any proposition to Rowe and Perini with-
out making the bond company a party of the same by a written
agreement, otherwise there would be great danger of nullifying
the bond." In October, the contractors reached the conclusion
that they could not construct the tunnel according to the plans
and specifications. There was evidence that Barbour suggested
to Rowe, one of the contractors, that the town should continue
the work, employing Rowe as its superintendent at a salary and
making certain allowances to the contractors for what they had
done. There was a meeting of the committee on October 17,
and Rowe testified that on the next morning he talked over a
telephone with Walker, and that in answer to Rowe's question
Walker said that the committee had decided to go ahead with
the work as suggested by Barbour, and added, " Go on with the
work, Mr. Rowe, give us the water as soon as you can and save
all the money you can for the town of Peabody "; that Rowe
assented to this, and put his men at work.

At the meeting of the committee on October 17, which has
been mentioned, a vote was passed " that the chairman be au-
thorized to make a contract with Mr. Rowe to continue the work

on a cost basis, all loss on the contract to the present time to be borne by the contractors, that Mr. Rowe be allowed six dollars ($6) per day for his salary as superintendent, that the surety company be informed of the change in the contract and it is understood they will consent to the change. It shall be agreed to by Mr. Rowe that this supplementary contract can be annulled by the committee at any time." The arrangement which had been suggested by Barbour to Rowe, and which the contractors said was agreed upon between Walker and Rowe, did not conform to the terms of this vote. There was no evidence that Rowe's alleged conversation with Walker was known to any other member of the committee or that the new arrangement alleged thus to have been made was communicated to any other member, or that it ever was assented to or ratified by any of them, either individually or at any meeting of the committee. Not only did Walker himself testify that hei made no such agreement with Rowe (which testimony of course would present merely a question for the jury), but each member of the committee testified that he never authorized or heard of any such agreement; and there was no evidence to the contrary. Under these circumstances, even if the testimony of Rowe had been believed by the jury, they would not have been warranted in finding that the town was at all bound by Walker's action in attempting to make a new agreement. The authority to speak for the town was in the committee as a collective body; no such authority could be found to have existed in any one member thereof, except as it might have been given to him by his associates. *Murdough* v. *Revere*, 165 Mass. 109. *Shea* v. *Milford*, 145 Mass. 528. *Haven* v. *Lowell*, 5 Met. 35. See *Damon* v. *Framingham*, 195 Mass. 72, 78. Nor is there to be found in this long bill of exceptions any evidence that such a new agreement as Walker was authorized by the vote of the committee to make was ever in fact made by him with the contractors or either of them. Under these circumstances we must regard the rights of the parties as fixed by the letter of Rowe abandoning the contract and the reply made by the committee in their letter of November 2. There was no evidence that the town had waived the obligations of the contractors.

We need not consider the contractors' requests for rulings in

detail.  They are all disposed of by what has been said.  We find no error in the action of the judge.

The second action was brought by the town against the surety upon the bond given by the contractors.  Most of the questions raised in this action have been sufficiently discussed.

The cost of the tunnel actually constructed was more than $47,000 in excess of the contract price for what was to have been done by the contractors.  Upon a careful examination of the evidence and the contentions made at the trial, as well as the very elaborate and learned arguments which were made before us, we are satisfied that all parties then conceded that the mode of construction adopted by the town was the cheapest and most advantageous one that could have been devised.  This resulted in giving to the town a larger tunnel than had been contracted for or than was needed or desired by the town ; but it sufficiently appears that it was of the smallest size that could have been made by the best and cheapest method of making any tunnel in this location.  The town, not having received the tunnel which the contractors had agreed to furnish and which their surety had agreed that they should furnish, was entitled to hold them for the cost of obtaining such a tunnel.  *Florence Machine Co.* v. *Daggett,* 135 Mass. 582.  *Hills* v. *Sughrue,* 15 M. & W. 253.  But it was the duty of the town to take all proper measures to diminish this *quantum* of damages.  *Loker* v. *Damon,* 17 Pick. 284, 288.  *Cavanagh* v. *Durgin,* 156 Mass. 466.  *Ingraham* v. *Pullman Co.* 190 Mass. 33.  *Sullivan* v. *Old Colony Street Railway,* 200 Mass. 303, 309.  This it has done.  It has obtained a tunnel such as it needed and in its main features such as it was entitled to under the contract, at a cost much less than would have been needed to procure the one contracted for.  That in doing this it has been forced to receive a tunnel somewhat larger than was contracted for and somewhat different in its method of construction does not necessarily diminish its damages, especially where this has materially lessened the burden upon those who are answerable to it.  Instead of being injured, the latter gain an advantage from the course which has been adopted, and they cannot be heard to complain thereof.

The penalty of the bond was less than the amount of the damages to which the town was entitled in equity and good

conscience. For this reason, interest was rightly allowed upon that penalty. *Bank of Brighton* v. *Smith,* 12 Allen, 243, 251. *Bassett* v. *Fidelity & Deposit Co.* 184 Mass. 210, 216. *Sampson Co.* v. *Commonwealth,* 202 Mass. 326, 339.

The exceptions in each case must be overruled.

*So ordered.*