968

**UNITED STATES for Use and Benefit of DAVIES v. BLAUNER CONST. CO. et al.**

No. 287.

District Court, D. Massachusetts.

March 20, 1941.

J. Alex Lane and Charles S. Maddock, both of Boston, Mass., for plaintiff.

Powers & Hall and Leon F. Sargent, both of Boston, Mass., for defendants United States Guarantee Co. and another.

FORD, District Judge.

This suit, involving eight items or claims, is brought under the provisions of Chapter 642, Section 2 of the Act of August 24, 1935, 49 Stat. 794, 40 U.S.C.A. § 270b(a), for the use and benefit of R. Fred Davies (hereinafter referred to as the plaintiff) to recover from the defendant Blauner Construction Company, a corporation, (hereinafter called Blauner) and the surety on a payment bond to protect all persons supplying labor and material in connection with a contract entered into between Blauner and

the United States for the construction of a post office in Orange, Massachusetts.

It was agreed between the parties that the plaintiff is entitled to recover on claims represented by items numbered 1, 2, 5, 6, 7, and 8 in exhibit "B" attached to the complaint in the sum of $293.63, inclusive of interest.

The case was tried to the court without a jury and at the close of the plaintiff's case, the defendants filed motions for dismissal of the plaintiff's complaint under the provisions of Federal Rules of Civil Procedure 41(b), 28 U.S.C.A. following section 723c, in so far as claims 3 and 4 in exhibit "B" attached to the complaint which relate to work and labor for rock excavation are concerned. These motions were allowed. As required by Rule 52(a) the following facts are found, conclusions of law stated, and the appropriate judgment directed for entry.

### Findings of Fact.

The defendants, Blauner and the United States Guarantee Company, executed and delivered to the United States a bond in the penal sum of $23,870, dated July 15, 1937, conditioned to make prompt payment to all persons supplying labor and material in the prosecution of the work provided in the contract referred to above.

On September 16, 1937, Blauner entered into a sub-contract with the plaintiff, a plumbing and heating contractor of twenty-two years' experience, wherein the latter promised "to furnish labor and material to do plumbing and heating in accordance with plans and specifications (United States Government) Sections 28, 29, 30, pp. 1–16, inclusive, for the sum of $5425". Before this contract was executed by the plaintiff, Blauner sent to him a complete set of government plans and specifications. The specifications, incorporated into the plaintiff's contract, required that "the entire plumbing installation shall comply with the requirements of the Standard Specifications for Miscellaneous Plumbing Materials and Labor, March 1, 1937." The Standard Specification required that all trenches required for soil, waste, vent and drain piping, "must be *excavated* with bottoms to the proper grade so that pipes will have a solid bearing" (Italics mine) and the "bottom of trenches shall be cut true to grade ⸎ * *". The piping was to be of the size noted and indicated on the drawings; catch basins required by plans were to be installed as indicated; and all work was required to be in accordance with specifications and plans furnished by the government and referred to above.

There was no dispute between the parties that what is set out above comprised the terms of the contract between Blauner and the plaintiff that are material to the issues involved in this case. The dispute was as to its meaning.

The plan entitled "Survey of Post Office Site" disclosed the presence of rock ledge on the site (area of latter 25,550 square feet) at three different places. Also on this plan there was set out the beneath the surface characteristics of soil and other material in, and location of, four test pits, one of which was located practically at each of the four corners of the site and fairly adjacent to the locations where the plaintiff was required to dig his trenches for the piping required for the plumbing and heating. The test pits depicted in the plans disclosed the presence of large boulders and rock ledge at varying elevations and, at some locations, above the depth to which the plaintiff was required by his contract to excavate.

The plaintiff commenced work on September 25, 1937, and on October 15, 1937, when about 55 per cent of his work was completed, he came upon considerable rock, boulders and rock ledge. At this point, he called the attention of these facts to Blauner's superintendent, who, I find, had complete charge of Blauner's work and full authority to act for Blauner in the latter's stead in connection with the construction of the post office. Although the plaintiff admitted he did not intend to relinquish or refuse to go on with his contract, he testified he told Fox in substance that he expected extra compensation for removing the rock and ledge he was about to encounter. The plaintiff further testified that Fox promised him extra compensation for any work performed in connection with the removal of this rock and ledge and that he, Fox, instructed the plaintiff, if necessary, to hire a compressor for breaking the rock. The plaintiff later procured the compressor. The plaintiff testified in substance that a few days later the president of Blauner promised to give him a work order for this work when it was finally completed. The plaintiff did the excavating that was required by the contract partly in October and November of 1937 and finished it in March and April of the following year. Part of the rock encountered was broken up

by the use of the compressor and part by blasting with explosives. It is for the net cost of removing this rock and rock ledge that was encountered in the excavating that this suit in part was brought, and the claims for it appear in items 3 and 4 of the exhibit attached to the plaintiff's complaint. ·

The plaintiff maintains that the excavation he was required to do by his contract did not include removal of rock or ledge and he was entitled to compensation for its removal as an extra. He based the claim on the alleged promise of Fox and the president of Blauner.

The evidence shows that when the president of Blauner talked with the plaintiff just before the contract was signed there was no talk whatsoever of rock or rock ledge. The plaintiff made no inspection of the site before signing the contract. He admitted that he observed the notations on the plan revealing the presence of rock ledge before signing his contract with Blauner. In consequence, when the plaintiff signed his contract with Blauner he knew there was considerable rock and rock ledge in or near the locations where the trenches for piping were to be dug, and, further, he should have known from the plans that the rock ledge was above the bottoms of the trenches required by the plans for the installation of the plumbing and heating.

The facts further disclose that when the plaintiff started to work on September 25, 1937, Blauner had done considerable excavation on its own account and from it the plaintiff knew that Blauner had struck some rock, but made no inquiry of Blauner as to what extent rock was present. I find that the plaintiff had equal opportunity to know of the presence of rock and rock ledge as had Blauner and there was no withholding of facts on the part of Blauner in reference to it or any misrepresentation concerning its presence. The surprising thing about the entire affair is that the plaintiff and Blauner both made bids for the work each was to perform without determining in advance as to what extent rock and rock ledge was present. Surely, the government itself practised no deceit upon either of them, as the plains testify. It was not until October 15 that the plaintiff made any complaint to Blauner's superintendent, though the evidence plainly showed that the plaintiff's laborers struck some rock immediately at the beginning of the work, on September 25. The plaintiff's foreman testified that when the rock was first noticed at the beginning of the work "it did not look serious". He further testified that they thought they could "chip" it out without great difficulty. Later, it turned out that at least half of the area dug contained rock and ledge that necessitated the use of the compressor and some explosives.

The plaintiff, in contending that excavation for the piping did not include removal of rock and rock ledge, relied to a great extent on evidence of the acts of the parties at and subsequent to the date of the contract between the plaintiff and Blauner. But the difficulty here is that the conduct of the parties did not warrant any conclusion other than that the word "excavation" was to be given its plain and natural meaning of hollowing out or digging out and removing whatever material was encountered in order to expose the cavity necessary to install the piping in accordance with the plans and specifications. In fact the conduct of the plaintiff, after he had knowledge of the presence of rock from the plans and after he was possessed of knowledge of the presence of some rock at the beginning of the work, in delaying his protest to Blauner, indicated that he did not expect any unusual difficulty. It also indicated, and I so find, that it was the understanding of the plaintiff that he was to remove whatever rock or other material that was encountered by him in excavating for the job. No other aspect of the evidence more favorable to the plaintiff was justified, in the light of all the circumstances. It was due to his neglect in failing to recognize the importance of the warning signs on the plans that led him into his difficulty. When he started the work he and his foreman miscalculated the amount of rock that was present. The conduct of the plaintiff in making the contract and starting to carry out its terms reflected inattention and miscalculation. He was too well disposed to take chances. There was nothing in the conduct of Blauner that indicated that it understood excavation to exclude rock and ledge excavations. The contract was for a lump sum. It was for the whole job of installing the plumbing and heating in accordance with the plans and specifications, which required the trenches to be dug for its installation. Even though it could be found that Blauner later agreed to pay him for the excavation of the rock as an extra, there was nothing in this to indicate that Blauner understood that excavation did not include the rock. There might be ample

reason for Blauner to make an additional promise to pay for the rock, if he did make one, other than for the reason he recognized that excavation did not include rock excavation. He had a job to do and might have wished to go on with it as quickly as possible. This element of desire to finish is always present in situations that arise in circumstances outlined here. The evidence showed that Blauner was equally as negligent as the plaintiff since it, too, was put to great added expense for rock and ledge excavation and the evidence showed that Blauner has already made a claim upon the United States for rock excavation as an extra, and, with the plaintiff's consent, included as a separate item in the claim the amounts sought to be recovered by the plaintiff in this action. The plaintiff insisted that he did this as an accommodation to Blauner. This claim against the government is still pending.

And, again, although I do not find that there was an ambiguity in the terms of the contract and find the excavation to be done included rock and rock ledge removed by the use of the compressor and explosives, yet, if it can be found in any way that there was any ambiguity, the evidence showed that a few weeks before the contract in suit was signed the plaintiff submitted a slightly higher price for the job and stated in writing that this bid "included in our price all digging in connection with the plumbing, also the catch basins". And, further, the plaintiff's testimony that Blauner promised to pay him for the rock and ledge excavation as an extra at the end of the job is controverted by the fact that while the job was going on the plaintiff was including in his progress sheets, and was being paid for, work in connection with the use of the compressors and blastings. From this latter fact, it can readily be deduced that up to October 15 the plaintiff recognized that he was to remove all rock. His real trouble was he did not know the extent of the rock, all of which was due to his own negligence. His contract for the rock as an extra, if it were made as he alleged, was the result of afterthought.

### Conclusions of Law.

Williston on Contracts, Rev.Ed., Vol. 6, Section 1964, states the principle of law applicable to a case involving facts such as we have here. Professor Williston states, "And a contract for excavation will generally not be excused because the character of the soil or rock is more trouble-some than was anticipated". The case of Rowe v. Inhabitants of Peabody, 207 Mass. 226, 93 N.E. 604 is cited by the author as one of the authorities for this statement of law. The contract here was made and performed in Massachusetts. The law of this state is applicable. The court in Rowe v. Inhabitants of Peabody, supra, 207 Mass. page 233, 93 N.E. page 605, in denying relief to a contractor who was warned, as here, that there might be difficulties in the construction of a tunnel, said, "They were warned that there might be such difficulties, and no one could say in advance that these might not be very great, or even insuperable. But they chose to make their agreement an absolute one, and the court cannot relieve them from the bargain which they saw fit to make." And in the case of Howard v. Harvard Congregational Society, 223 Mass. 562, 564, 112 N.E. 233, the court stated, in allowing recovery on an excavation contract limited to certain types of material, that a contract to excavate a cellar without reference to any particular kind of material that might appear under the surface of the earth in making the excavation required, prevented the contractor from recovering for work and labor entailed in the removal of unexpected difficulties, citing the cases of Braney v. Inhabitants of Millbury, 167 Mass. 16, 44 N.E. 1060 and Stuart v. Cambridge, 125 Mass. 102, as authorities.

In accordance with the rule in these cases, I conclude that by a fair construction of the contract between the plaintiff and Blauner the plaintiff agreed to do the excavation necessary, including the removal of rock and rock ledge. Under the contract the plaintiff made here, he took the risk of encountering obstructions. I find the plain terms of the contract lead to this conclusion as does the conduct of the parties. In view of the fact that the authorities indicate that where one makes a general contract such as was made here, unforeseen difficulties do not excuse performance, then certainly when the difficulties are foreseen, or should have been foreseen, as here, and they are met, performance cannot be excused because of their presence. Many cases in Massachusetts justify this conclusion. Morse v. City of Boston, 260 Mass. 255, 263, 157 N.E. 523; Hodgkins v. Charles E. Currier Co., 232 Mass. 528, 122 N.E. 653; N. J. Magnan Co. v. Fuller, 222 Mass. 530, 111 N.E. 399; Boyle et al. v. Agawam Canal Co., 22 Pick.

381, 33 Am.Dec. 749; Adams v. Nichols, 19 Pick. 275, 31 Am.Dec. 137.

In this view, it is not necessary to find whether or not Blauner promised the plaintiff to pay him for the rock or ledge excavation as an extra after the plaintiff started to carry out the terms of the contract, as such promise would be without consideration and the plaintiff could not recover on it. It may be noted further that there is no room in this case for the application of the doctrine laid down in the case of Munroe v. Perkins, 9 Pick. 298, 26 Mass. 298, 20 Am.Dec. 475, as the evidence here plainly shows that the plaintiff at no time intended to relinquish his contract.

Judgment is to be entered for the plaintiff in the sum of $293.63, with costs.