PHILIP E. CONNERS *vs.* TOWN OF TEWKSBURY.

Middlesex.    October 3, 1945. — October 31, 1945.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & WILKINS, JJ.

*Contract*, Modification, Building contract, Construction.

Substitution, at the direction of a committee in charge of the alteration
of a school building for a town, of a specified heater for that named
in the building contract, "on which . . . [the contractor had] based
. . . [his proposal]," did not abrogate a provision of the contract
wherein the contractor guaranteed to heat the building to a specified
degree, where it appeared that, although the contract provided that
changes in the work might be made by the town, it also provided that
changes should "be performed subject to, and in all respects in accord-
ance with the terms of this contract," that the direction for the change,
made by letter, stated that it was to be "All . . . in accordance with
the other terms of the plans and specifications," and that the con-
tractor's reply proposal was "In accordance with" that letter.

CONTRACT.   Writ in the Superior Court dated January 9,
1942.

The case was tried before *Forte*, J.

*L. F. Garvey*, for the plaintiff, submitted a brief.

*M. G. Rogers*, for the defendant.

WILKINS, J.   The plaintiff sues in contract for a balance
allegedly due under a written contract for alterations to a
school building.   The judge directed a verdict for the plain-
tiff, and reported the correctness of his ruling to this court
on the terms that if it was correct, judgment is to be entered
upon the verdict, otherwise judgment is to be entered for
the defendant.

The contract, dated June 12, 1941, originally contained
the following: "Contractor to guarantee to heat the build-
ing to 70 degrees Fahrenheit when outside temperature
drops to 10 degrees below zero.   Contractor to submit
drawings and details covering the installation of this sys-
tem for the approval of Architect.   This work to be com-
pleted on or before September 1, 1941.   This Heating and

Ventilating System is to conform to all State Rules and Regulations. The Town of Tewksbury may make any changes by altering, adding to, or deducting from the work without invalidating the contract, and the contractor shall perform any work, not otherwise provided for, that may be required, and shall accept payment therefor on the basis of the cost as submitted by the Contractor in writing and accepted by the Building Committee in writing and approved by the Architect.. . . . No changes shall be made until a written order has been issued and approved by the Architect and signed by the Building Committee. Any additions, changes or alterations of this contract, or of the work, shall be performed subject to, and in all respects in accordance with the terms of this contract."

A sub-bid accepted by the defendant which, according to the report, "became a part of the contract" provided that the plaintiff should instal a "No. 36 Bertossa Heating Unit." On June 25, 1941, the architect wrote the plaintiff: "I have been instructed by the Building Committee for the Shawsheen School to have you submit the cost of substituting a No. 9 Premier Heavy Duty Warm Air Furnace with casing, blower, motor, filters and humidifier, instead of the type on which you based your proposal. All to be in accordance with the other terms of the plans and specifications." On June 26, 1941, the plaintiff wrote the architect: "In accordance with your letter of June 25, I am enclosing herewith a proposal in the amount of $284 for substitution of No. 9 Premier Heavy-Duty Warm Air Furnace, in lieu of No. 36 Bertossa Heating Unit." Enclosed in that letter was the following letter of the same date from the plaintiff to the building committee: "This is to advise you that in the event you desire to specify a No. (9) Premier Heavy-Duty Warm Air Furnace, Blower, etc. in lieu of a No. 36 Bertossa Heating Unit, the difference in price will be $282.60 additional." On July 8, 1941, the building committee wrote the plaintiff: "Your proposal to furnish and install a No. 9 Premier Heavy Duty Warm Air Furnace with casing, blower, motor filters and humidifier in lieu of a No. 36 Bertossa Heating Unit for the additional

sum of $282.60 is hereby accepted." The last letter bore the written approval of the architect.

Thereupon the plaintiff installed a "Premier" furnace of the size and with the attachments ordered, which, however, did not heat the building to seventy degrees Fahrenheit when the outside temperature dropped to ten degrees below zero. The work was not completed to the satisfaction of the architect and the building committee for the sole reason that the heating plant did not heat according to the guaranty set forth in the original contract. The report states: "It was agreed that the work performed by the plaintiff was done in a workmanship [sic] manner and that the installation of the heating unit and heating plan was approved by the architect."

The question for decision is whether the amendment to the contract eliminated the guaranty clause. The plaintiff emphasizes that under the original contract the plaintiff, with the approval of the architect, could select the type of heater, and that by the amendment the defendant specified the type. The contract, however, provided that all changes should be performed in accordance with the original terms. What is even more significant, the letter of June 25 stipulated that the change was "to be in accordance with the other terms of the plans and specifications," and the plaintiff's letter of June 26 expressly stated that it was "in accordance with" that letter. We cannot accept the plaintiff's contention that the effect of the amendment was to substitute the installation of a "No. 9 Premier Heavy-Duty Warm Air Furnace" in place of the guaranty clause. This gives no weight to the fact that the sub-bid calling for the installation of a "No. 36 Bertossa Heating Unit" had become "a part of the contract." It also seems to us, in the light of the language used, more reasonable to conclude that the only change was in the type of heater to be installed, that the amendment concerned the provision that the contractor was "to submit drawings and details covering the installation of this system," and that the guaranty clause continued unaffected. This is the result of the contract that the parties made. It does not appear that the

plaintiff contracted to do the impossible. But if he had, he could be held to his undertaking. *Rowe* v. *Peabody,* 207 Mass. 226, 233. *N. J. Magnan Co.* v. *Fuller,* 222 Mass. 530, 533. *Beacon Tool & Machinery Co.* v. *National Products Manuf. Co.* 252 Mass. 88, 90. The cases in other jurisdictions relied upon by the plaintiff relate to contracts which are different from that in the case at bar. Also distinguishable are cases, of which *Curwen* v. *Quill,* 165 Mass. 373, and *Cashman* v. *Proctor,* 200 Mass. 272, are examples, where the contractor performed all he was required to do under the contract.

In accordance with the terms of the report the entry must be

*Judgment for the defendant.*