NEW HAVEN AND NORTHAMPTON COMPANY *vs.* JOEL HAYDEN
& others.

One who is a stockholder and director of a manufacturing corporation, and overseer of part of its business, has not thereby authority to bind the corporation to a contract to aid in the extension of a railroad.

Several persons signed a writing in which they described themselves as representing a large portion of business on the line of a proposed extension of a railroad, and undertook to secure subscriptions to the stock of the railroad corporation to a certain amount, and pay for the same in instalments, and also proposed to secure the right of way for the extension of the railroad, free of expense to the corporation, and to obtain the legislation needful to carry out the proposed plan, the proposition not to be binding unless they could secure the right of way or make such arrangement in regard thereto as should be satisfactory to the corporation. The corporation accepted the proposal, having at the time no authority to extend its railroad, but subsequently obtained authority from the legislature. The signers afterwards agreed in writing that it might go forward and secure the right of way without prejudice to the rights of either party; and thereupon it purchased the right of way. *Held,* in an action by the corporation against the signers for their failure to secure the right of way, that the contract was lawful, and that the burden of showing that the defendants were unable to secure the right of way was upon them.

CONTRACT against Joel Hayden, the Nonotuck Silk Company, Lewis Bodman and five others, on an agreement contained in two papers signed by them.

The first was as follows : " Williamsburg, January 26, 1866. To J. E. Sheffield, Esquire, Committee of the Northampton & New Haven Railroad Company. The undersigned, representing a large portion of business on the line of the proposed railroad from Northampton to Williamsburg, propose that, if your company will extend their road to Williamsburg as soon as practicable, we will undertake to secure good, responsible subscriptions to the stock of your company, to the amount of 1250 shares, and pay for the same in instalments, as needed for building the road. We also propose to secure the right of way for the road, free of expense to your company, from the westerly side of the town farm in Northampton to the western terminus of the road in Williamsburg, and also to obtain the needful legislation in Massachusetts to merge or consolidate the Northampton & Shelburne Falls Railroad Company with the Northampton & New Haven Railroad Company, so as to form one corporation from New Haven to Wil-

liamsburg. It is understood that this proposition is not to be binding on our part, unless we can secure the taking of the amount of stock above named, and also the right of way, or make such arrangement in regard to the same as shall be satisfactory to your company; also that the stock (1250 shares) is not to share in the earnings of the road until the extension is in operation."

The second paper was as follows : " Williamsburg, August 13, 1867. To the New Haven & Northampton Company. The undersigned, whose names are subscribed to proposals submitted in January 1866 to the New Haven & Northampton Company for them to extend their railroad to Williamsburg, hereby agree that said company may go forward and secure the right of way for said road west of Northampton town farm, either by purchase or appraisement by the county commissioners, as said company may think best, and that it shall be done without prejudice to the legal rights of either party named in said proposals."

The declaration alleged that the defendants made the agreement above set forth, whereby they agreed to secure the right of way for the plaintiffs for their railroad, free of expense to the plaintiffs, from the westerly side of the town farm in Northampton to the western terminus of the road in Williamsburg, for divers valuable considerations on the part of the plaintiffs, all of which have been fully performed by the plaintiffs, but that the defendants neglected and refused to perform the stipulations on their part to be performed.

The Nonotuck Silk Company, in their answer, denied that they signed the papers mentioned in the declaration. The other defendants in their answers admitted that they signed the papers, denied that thereby they agreed to secure the right of way for the plaintiffs, as alleged in the declaration, or any right or rights of way whatever, and alleged " that if they agreed to do anything by said instrument, the same had been by them fully performed, and that they could not secure for the plaintiffs the right of way mentioned in said instrument, nor make any arrangements therefor to the plaintiffs, as contemplated in said instrument."

At the trial in the superior court, before *Wilkinson*, J., the plaintiffs offered to prove that " the proposal referred to in their declaration was made by the defendants to the plaintiffs, and was accepted by the plaintiffs on February 1, 1866 ; that under the St. of 1866, *c.* 66, the plaintiffs located and constructed a railroad from Northampton to Williamsburg, being an extension of their road ; that the defendants did not procure the right of way west of the town farm, and refused to pay the land damages for land taken for the road, west of said farm, and the plaintiffs were obliged to pay the same, for which, with cost and expenses occasioned thereby, this action was brought ; and that the name of the Nonotuck Silk Company, annexed to the proposal, was written by Lucius Dimock, who was at the time a stockholder and director of the corporation, and overseer at Leeds, where part of the corporation's manufacturing was carried on ; but the plaintiffs offered no other evidence of any authority on the part of Dimock to sign the name of the corporation."

The judge ruled that the action could not be maintained, and by consent of the parties reported the questions of law to this court ; if the ruling was correct, the plaintiffs to become nonsuit ; otherwise, the case to stand for trial.

*W. Allen & H. B. Stevens,* (*E. B. Gillett* with them,) for the plaintiffs.

*N. A. Leonard & D. W. Bond,* for the defendants. If the case shows a contract between the plaintiffs and defendants in relation to the extension of the plaintiffs' road, the contract is void. At the time of the alleged contract, the terminus of the plaintiffs' road was in Northampton ; they had no authority to extend the road ; Sts. 1853, *c.* 397 ; 1862, *c.* 97 ; and any attempted contract so to do was void. *Pennsylvania, Delaware & Maryland Steam Navigation Co.* v. *Dandridge,* 8 Gill & J. 248. *Abbott* v. *Baltimore & Rappahannock Steam Packet Co.* 1 Maryl. Ch. 542. *Pearce* v. *Madison & Indianapolis Railroad Co.* 21 How. 441. *Bissell* v. *Michigan Southern Railroad Co.* 22 N. Y. 258, 285. *Hood* v. *New York & New Haven Railroad Co.* 22 Conn. 502. *Richardson* v. *Sibley,* 11 Allen, 65. If the contract was void, it could not be ratified either by act of the legislature or consent of

the parties. *Hackley* v. *Sprague*, 10 Wend. 113. *Mays* v. *Williams*, 27 Alab. 267. No acceptance or notice of the paper of August 13, 1867, appears on the part of the plaintiffs. Dimock had no authority to sign the name of the Nonotuck Silk Company. The defendants, when they made their proposals, represented that they were acting in behalf of a community, who were interested in the extension of the plaintiffs' railroad, and not in their own interest.

AMES, J. It does not appear that Lucius Dimock had any authority to bind the Nonotuck Silk Company by his signature to the alleged contract; and the plaintiffs therefore cannot maintain their action against that corporation.

But with regard to the other defendants the case stands upon other grounds. The written proposal of January 26, 1866, must be considered as a petition to the plaintiffs to extend their railroad from Northampton to Williamsburg. In that proposal, they describe themselves as " representing a large portion of business on the line of the proposed railroad," — a form of expression which certainly does not mean that they were acting merely as the agents of other parties not named. We understand their language to signify that they had the control of a large amount of business which they would be willing to transfer to the proposed extension, and that it would be for the interest of the plaintiffs to make that extension. They undertake also to see that the funds necessary for that purpose shall be forthcoming, by securing good, responsible subscriptions to the stock of the plaintiff corporation, to the amount of twelve hundred and fifty shares, to be paid for in instalments as needed for the building of the road. They also undertake to secure the right of way for the road, within certain definite termini, without expense to the plaintiffs; and to obtain the legislation in Massachusetts necessary for the accomplishment of the proposed object. This proposal was accepted by the plaintiffs, and the transaction therefore had all the formal and essential elements of a binding contract, provided it was one which the parties were legally competent to make.

It is true that, at the date of this transaction, the plaintiffs had no authority to extend their railroad farther north than

Northampton, and if their contract had been simply to do what they had no legal capacity or right to do, it would have been wholly void. But this is not the true interpretation of the contract. It was a part of the defendants' proposition, to obtain from the legislature of the Commonwealth a statute for the purpose of removing this difficulty; that is to say, as we understand it, they undertook to make an application, and to take the usual and proper means for obtaining such a statute. This was a matter in which neither party had reason to apprehend difficulty; and the desired authority was in due time granted, for the extension of the road and the increase in the capital stock of the company necessary for that purpose. St. 1866, *c.* 66. The proper interpretation of the defendants' request therefore is this: If, when the needful legislation is obtained, the railroad company will extend their road in the manner pointed out, we on our part will furnish whatever is payable on 1250 shares in the capital stock, and we will secure the right of way free of expense to the company. That is to say, the contract was substantially conditional, and prospective, looking forward to an expected state of things. The company agreed to do certain things which required that certain legal disabilities should be first removed, and in the expectation that they would be so removed. This agreement they made at the request and upon the invitation of these defendants. The needful legislative sanction has been obtained; the road has been located exactly as requested by the defendants; the new stock has been created, subscribed for and paid up; and the road has been constructed, and is in daily and constant use. The right of way was not secured by the defendants according to their written proposal; and it was therefore arranged by a new agreement, that the company should go forward and secure that right, either by purchase or appraisement of the county commissioners, "without prejudice to the legal rights of either party named in said proposals."

The *bona fides* of the stipulation on the plaintiffs' part is not in dispute. It was in substance an agreement to do something not at that time legal, but which the passing of an expected statute would render legal; and both parties must have understood

that, if the sanction of the legislature should be withheld, the con-
tract would not go into effect. The contract does not import that
the plaintiffs bound themselves to construct the road at all events
and without legislative authority. Many cases have arisen in
which contracts made in anticipation of such authority have been
before the courts. Thus in *Scottish Northeastern Railway Co.*
v. *Stewart*, 3 Macq. 382, a railroad corporation had bound itself
to purchase land, if authority should be given by parliament.
Lord Wensleydale, in rendering judgment, says : " No objection
can, I think, be made, on the *ultra vires* doctrine, to a contract
by a company who wish to alter one of the branches of their rail-
road, and are about to apply to parliament for authority to do so,
engaging to purchase land from a neighboring proprietor, if they
should obtain their act." In another case, Mr. Justice Erle says :
" Although the works contracted for would have been unlawful
without an act of parliament, still, if the parties intended to ob-
tain the act before the works were done, they would not intend
to violate the law when the contract was made, nor violate it by
doing the works according to the act." *Mayor of Norwich* v.
*Norfolk Railway Co.* 4 El. & Bl. 397, 410. So in *Taylor* v.
*Chichester & Midhurst Railway Co.* Law Rep. 4 H. L. 628,
where a like objection was taken, it was held that " an agree-
ment, to arise and take effect on the passing of a bill then pend-
ing in parliament, is to be regarded, by virtue of that stipulation,
as if it had been *de facto* made after the passing of the bill."
And in a case in New Jersey, where a railroad had made a
contract relating to business " upon any future extensions or
branches," it was held that branches not then authorized, but
subsequently allowed by the legislature, were included. *Sussex
Railroad Co.* v. *Morris & Essex Railroad Co.* 4 C. E. Green, 13.

But the objection " on the *ultra vires* doctrine," whatever may
be its weight, is not open to these defendants. The agreement
of August 13, 1867, was made after that objection had been re-
moved by the legislature, and may be said to admit the authority
of the company to do what was stipulated to be done on its part
in the acceptance of the proposals of January 26, 1866 or at
least to recognize the existence of that earlier agreement.

In this view of the case, we think that the objection that the plaintiffs had no legal authority to extend their road, and that the agreement to do so is therefore void, is wholly untenable. It appears to us that upon the case presented by the report the plaintiffs have gone far enough to put the other party upon their defence. By the terms of the contract, the defendants were not to be bound unless they could secure the taking of the amount of stock above named, and also the right of way, or make such arrangement in regard to the same as should be satisfactory to the company. As the answer which they have filed is silent with regard to the stock, it must be inferred that so much of the contract as relates to that item has been fulfilled; and the case has proceeded upon that assumption upon both sides. The answer insists, however, that the defendants have not been able to secure the right of way, or to make any satisfactory arrangement therefor. It appears to us that this suggestion belongs to an affirmative defence, upon which the burden of proof rests upon the defendants. A stipulation that a promise is not to be binding upon the happening of some future event is equivalent to saying that it is defeasible on a condition subsequent, and the promisor must show that the event has happened. They were bound to secure the right of way if they could ; and their failure to do so, after suitable efforts, could only be matter of excuse. It is a sufficient foundation for the plaintiffs' case to show that the right of way was not secured. *Gray* v. *Gardner*, 17 Mass. 188. *Thayer* v. *Connor*, 5 Allen, 25. *Jennison* v. *Stafford*, 1 Cush. 168. What arrangements the defendants have attempted to make, what impediments they have met with, and whether they have made any, and what, efforts to obtain the right, are matters peculiarly within their own knowledge, in relation to which the plaintiffs cannot be supposed to have definite information. As the report stands, it does not appear that the defendants have done anything whatever in relation to that part of their · undertaking, and it was a mistake to rule that the action could not be maintained upon the facts which they offered to prove.

Upon this review of the argument, therefore, our conclusion is, that the                                        *Case must stand for trial.*