JOHN SOLEY AND SONS, Incorporated, *vs.* J. EDWIN JONES & another.

Suffolk.    March 7, 1911. — May 17, 1911.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Contract,* In writing, Construction.    *Damages,* In contract.

In an action for a balance alleged to be due under a contract in writing, whereby the plaintiff agreed to do for the defendant all the shoring for underpinning buildings in a certain section of the Washington Street tunnel in Boston, which the defendant was engaged in constructing under a contract made by him with the city of Boston through the transit commission of that city, it appeared that the contract of the defendant with the city contained a clause giving the transit commissioners the right to terminate it if the engineer should certify to them in writing that the contractor was not making such progress in the execution of the work as to indicate its completion within the required time, and that, after a part of the work under the plaintiff's contract had been done by the plaintiff and had been paid for by the defendant, the defendant's contract with the city of Boston had been terminated by the transit commissioners under that clause. The plaintiff's contract contained a provision that all the work should be done according to orders and directions and to the satisfaction of the transit commissioners or their authorized agents, and the plaintiff at the time of making his contract with the defendant had a copy of the defendant's contract with the city and was familiar with its provisions, including that relating to the commissioners' right to terminate it. *Held,* that, the plaintiff and the defendant having made their contract with knowledge of the possibility of such a termination of the defendant's contract with the city as had occurred and having failed to provide for such a contingency reasonably to be anticipated, the defendant was bound by his absolute promise to pay the plaintiff the contract price for the work stipulated for in his contract; so that the plaintiff was entitled to recover the unpaid balance of such contract price after deducting from it the reasonable cost of completing the work in accordance with the terms of his contract.

CONTRACT for a balance of $3,000 alleged to be due to the plaintiff under a contract in writing, which is printed below, by which the plaintiff agreed to do all the shoring for underpinning buildings in section 3 of the Washington Street tunnel in Boston, in the vicinity of Boylston Street and Hayward Place in that city, which the defendants were engaged in constructing under a contract made by them with the city of Boston through the transit commission of that city. Writ dated September 12, 1905.

The contract between the plaintiff and the defendants, of which a copy was annexed to the declaration, was as follows:

"Articles of agreement entered into this ninth day of January, 1905 between John Soley & Sons, a corporation, of Chelsea and Hyde Park, Massachusetts, and J. Edward Jones and Michael Meehan, co-partners doing business under this name of Jones & Meehan;

" Witnesseth:

" That for and in consideration of $7000.00 to be paid by said Jones & Meehan to said John Soley & Sons in monthly payments based upon the estimate in writing of the Engineer in the same proportion to the entire contract price as the contractor shall be paid.

" It is further agreed that the said John Soley & Sons shall do all the shoring for underpinning buildings according to plans and specifications of Section 3, Washington Street Tunnel, so-called, and they are to do such extra shoring as may be necessary for all alterations in the two store fronts of the Arioch Wentworth Building, including the putting in of all columns and I beams.

" It is further agreed by and between the parties to this agreement that any sums charged by the Boston Transit Commission for the occupation of street space by the shores of the said John Soley & Sons, shall be equally divided.

" It is further agreed that in case the alterations in said store fronts are not made the sum of $150.00 shall be deducted from the above contract price.

" The foregoing includes the shoring work proper by the said John Soley & Sons, shoring area walls as far as practicable, incidental repairs to fronts of buildings, but does not include incidental .

excavations, repairs to sidewalks and areas, repairs and charges necessitated in basements nor mason work of underpinning.

"All work to be done in a careful and workmanlike manner according to orders and directions and to the satisfaction of the Boston Transit Commission or their authorized agents.

"Said John Soley & Sons shall pay all costs, damages and fines arising from their non-compliance with said plans and specifications and contract.

"Jones & Meehan,
John Soley & Sons, Inc.
By W. A. Soley, Treas."

In the Superior Court the case was tried before *Hardy*, J. The case was referred to Arthur P. Hardy, Esquire, as auditor, who filed a report.  The following facts appeared in evidence:

The defendants on December 19, 1904, entered into a contract with the city of Boston, acting by the Boston transit commission, for the construction of section 3, so called, of the Washington Street tunnel, in Boston.  On January 9, 1905, the defendants made with the plaintiff the contract printed above.

The plaintiff's president and treasurer had a copy of the defendants' contract with the city of Boston and the construction plans before the execution of the contract of the plaintiff with the defendants and testified that at that time they were familiar with its contents.

The plaintiff began work under its contract and prosecuted it until July 18, 1905, when it ceased work, on learning that the Boston transit commission had terminated the contract of the city of Boston with the defendants.  The work done by the plaintiff was satisfactory.  The plaintiff admitted that of the work required to be done under its contract it had not completed at the time it ceased work the shoring of two piers and the shoring of a building on Essex Street.  In addition to this work which had not been done the defendants contended and offered evidence tending to show that the plaintiff was required under the contract, and that it was practicable, to shore area walls to the extent of two hundred and eighty-five feet and that this had not been done when the plaintiff ceased work.  The plaintiff offered evidence tending to show that it was not practicable to shore this area wall.

The provision of the contract of the defendants with the city of Boston under which that contract was terminated by the transit commissioners was as follows: " If at any time the engineer shall be of the opinion, and shall so certify in writing to the commission, that the said work is unnecessarily or unreasonably delayed, or that the contractor is wilfully violating any of the conditions or agreements of this contract, or is not executing said contract in good faith, or is not making such progress in the execution of the work as to indicate its completion within the required time, or is not properly supporting or protecting adjacent pipes and structures, the commission may notify the contractor to discontinue all work, or any part thereof, under this contract; and thereupon the contractor shall discontinue said work, or such part thereof as the commission may designate."

The plaintiff contended that it was entitled to recover the contract price, namely, $7,000, less any sums paid on account, and less what it would have cost the plaintiff to finish the work by shoring the two piers above referred to and the building on Essex Street. The plaintiff refused to make any deduction because of area walls and contended that under the contract no deduction should be made therefor.

The defendants contended that the plaintiff was entitled to recover only the fair value of the work actually done by it, allowing it a reasonable profit thereon, and that any deductions from the contract price for work not done should not allow the plaintiff in effect to recover the profit it would have made if all the work provided for in the contract actually had been done.

There was no dispute as to the amount of the payments made on account, which was agreed to be $3,900.

The judge ruled that evidence as to the causes for the termination of the contract between the defendants and the city of Boston, represented by the transit commission, was not material, and no evidence was introduced with reference to this subject. The judge instructed the jury that there was no evidence from which the jury could impute blame to the defendants in the termination of that contract with the city of Boston, and no inference against the defendants was to be drawn because of the act of the transit commission in terminating that contract, as the

right to terminate was reserved to the transit commission in its contract with the defendants.

At the close of the evidence the defendants asked the judge to give, among others, the following instructions to the jury:

" 1. Under the first count* of the declaration the plaintiff is entitled to recover only the same proportion of the entire contract price as the defendants received under their contract with the transit commission on account of the work done by the plaintiff.

" 2. Under the first count of the declaration the measure of damages is the fair value of the work actually done, allowing the plaintiff a reasonable profit for such work."

" 6. Under the first count of the plaintiff's declaration the plaintiff is not entitled to recover the profit it might have made on the work not done if the contract had been fully performed."

The judge refused to give any of these instructions, and on the question of damages instructed the jury as follows:

" The plaintiffs are entitled to compensation for the work done so far as it was done here, substantially performed, less the proper deductions that were to be deducted from that amount because of the termination of the work, because they have not completed it. Now, that deduction, in accordance with my instructions to you is, what would be the cost to the plaintiffs to complete the work that remained to be done, considering that the materials that were to be used in connection with it and the tools were there upon the premises, what would be the market value of the work to be done, that is, what would be the reasonable cost? Of course profit upon any contract depends upon the difference between the cost to the man who performs the work and the amount that he may have received for the work to be done. The contractor in this case, of course, had to furnish labor, superintendents of labor, materials in connection with the shoring, tools. Tools were liable to depreciation. Cost of insurance is to be considered in connection with that. And that is all that you are to consider here, what was the difference — what was the actual cost to him, so far as you can deal with that

---

* There were three counts in the declaration, but the case was tried only on the first, which was for the balance due under the contract. The second count was waived by the plaintiff, and upon the third count a verdict for the plaintiff in the sum of $70.78 was agreed to.

proposition here upon the evidence presented to you, what would be a fair cost — of course I don't mean actually in the sense that it was performed by him — but what would be the fair, reasonable cost to complete the work."

On the first count the jury returned a verdict for the plaintiff in the sum of $3,641 ; and the defendants alleged exceptions.

The case was submitted on briefs.

*W. P. Meehan & C. H. Donahue*, for the defendants.

*L. L. G. de Rochemont*, for the plaintiff.

BRALEY, J.  It is a general rule, that parties cannot be relieved from their contracts fairly made with full knowledge of the facts, although they may have mistaken their rights or have failed to restrict sufficiently their liabilities. *Hawkes* v. *Kehoe*, 193 Mass. 419.  The defendants knew that by its terms their contract with the transit commissioners could be cancelled and discharged, if the engineer gave a certificate that they were not making such progress in the execution of the work as to indicate that it would be completed within the period fixed for performance.  It was with this knowledge that they entered into the agreement with the plaintiff as a subordinate contractor to perform a part of the work.  The impossibility of the defendants' performance of the plaintiff's contract, if the contingency arose, could have been foreseen and provided for in the instrument.  A provision that the promise should be dependent upon the continued existence of the principal contract would have been sufficient to protect the defendants, if the plaintiff was compelled to abandon the work, because the contract with the commissioners was terminated. *New Haven & Northampton Co.* v. *Hayden*, 107 Mass. 525, 531.  It is the defendants' contention, that, when construed in connection with the circumstances, such a condition appears by implication or is an unexpressed term of the agreement. *Hebb* v. *Welsh*, 185 Mass. 335, 336.  The plaintiff's contract contained a clause providing that the work should be performed subject to the directions and to the satisfaction of the commissioners or of their authorized engineer, and the plaintiff concedes that the amount and character of the work could be ascertained only by resort to the specifications of the main contract. If the principal contract in its entirety had been referred to by appropriate language it would have been incorporated, but it cannot be read

into the agreement by implication, where only that part which is germane to the plaintiff's performance may be implied, and the language is unambiguous. *De Friest* v. *Bradley,* 192 Mass. 346, 353. *Lipsky* v. *Heller,* 199 Mass. 310, 315. The auditor, whose finding is not questioned, reports that the plaintiff at the time of execution knew not only of the specifications under which its work must be done, but of the article of cancellation. It apparently acted upon this information when it ceased work upon having been informed that the right of termination had been exercised. The act of the commissioners and its decisive effect upon the plaintiff's right to go forward under the contract having been known to each party, further notice from one to the other of their several rights or demands would have been a vain formality. *Cumberland Glass Manuf. Co.* v. *Wheaton, ante,* 425. It is urged that, the possible disability which would prevent performance by the defendants having been known to the plaintiff at the inception of the contract, it was mutually understood that the defendants did not intend to perform, and that the plaintiff had no expectation of performance, unless the principal contract remained in force. But while we can construe the contract in writing which the parties made, we cannot make a contract for them. It is only where an unanticipated event happens, which was not in the contemplation of the parties at the inception of the contract and upon which the continued existence of the contract must depend, that upon the happening of the event the contract is dissolved and the promisor is relieved from further performance. *Butterfield* v. *Byron,* 153 Mass. 517. *Hawkes* v. *Kehoe,* 193 Mass. 419, 423. *Vickery* v. *Ritchie,* 202 Mass. 247, 251. *Rowe* v. *Peabody,* 207 Mass. 226. *Sun Printing & Publishing Association* v. *Moore,* 183 U. S. 642. *Baily* v. *De Crespigny,* L. R. 4 Q. B. 180, 185. If the plaintiff and the defendants contracted with knowledge of the clause of termination, the defendants of course knew that when the principal contract came to an end either with or without their fault further performance by the plaintiff would be impossible. Instead of providing for a contingency reasonably to be anticipated, the defendants gave an absolute promise to pay the contract price on the basis that there should be no interference with the work of construction if the plaintiff's conduct was satisfactory to the

commissioners as it appears to have been. Having made themselves responsible for the existence of the subject matter of the contract until without fault on the plaintiff's part it had been performed, they are not within the exception or principle of construction recognized and followed in *Wells* v. *Calnan*, 107 Mass. 514; *Butterfield* v. *Byron*, 153 Mass. 517; *Young* v. *Chicopee*, 186 Mass. 518; *Angus* v. *Scully*, 176 Mass. 357; and *Hawkes* v. *Kehoe*, 193 Mass. 419, where the occurrence which discharged the contract was of such a character that the parties were held not to have had it in contemplation at the making of the agreement. See *Hebert* v. *Dewey*, 191 Mass. 403, 411; *Vickery* v. *Ritchie*, 202 Mass. 247. The rulings on the question of liability upon which the measure of damages under the first count of the declaration must rest, to the effect that the causes for the termination of the principal contract were immaterial as the commissioners had reserved that right, and that there had been a breach, were in accordance with our construction of the rights of the parties. The contract not having been dissolved, the plaintiff was not remitted to compensation for the fair value of the work done with a reasonable profit for such work and also upon the work remaining to be performed, or restricted to a sum which would be proportionate to the contract price the defendants were to receive from the commissioners. But it was entitled to the benefit of the contract, after deducting from the contract price the reasonable cost of completing the work. *Olds* v. *Mapes-Reeve Construction Co.* 177 Mass. 41. *Norcross Brothers Co.* v. *Vose*, 199 Mass. 81. *Gagnon* v. *Sperry & Hutchinson Co.* 206 Mass. 547. The rulings requested were rightly refused, and the instructions given were correct.

*Exceptions overruled.*