RICHARDS & CO., Inc., v. WRESCHNER et al.

(Supreme Court, Trial Term, New York County. October 22, 1915.)

1. SALES ⬤⟞172—EXCUSE FOR NONPERFORMANCE—IMPOSSIBILITY—WAR.

Defendant, a German copartnership, on January 28, 1914, contracted through its New York City branch to sell 120 tons Belgium H. H. antimony to be shipped at the rate of 15 tons per month to September, inclusive, and set up as an excuse for failure to make the last two deliveries that after July 31, 1914, the production of that antimony at a particular factory in Belgium ceased because of the war, that all exports of antimony over the German frontier had been forbidden, and that the seller became an enemy of the Kingdom of Belgium, and that commercial intercourse with its inhabitants and its industries was prohibited by the German government, so that performance was impossible, but it did not

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

appear that the seller could not have provided itself with a sufficient supply to make all deliveries from some European port, or that it could not have procured the antimony from a warehouse in some neutral country of Europe. *Held*, that the alleged impossibility of performance did not excuse complete delivery, and that the seller was liable in damages.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 425–430; Dec. Dig. ☞172.]

2. CONTRACTS ☞303—NONPERFORMANCE—FOREIGN WAR.

Impossibility of performance due to a foreign war is no excuse.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1409–1443; Dec. Dig. ☞303.]

3. SALES ☞201—TITLE—DELIVERY.

Under the provision in an executory contract of sale of "no arrival, no sale," title remained in the seller until delivery.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 529–541; Dec. Dig. ☞201.]

4. SALES ☞55—WHAT LAW GOVERNS—LEX LOCI CONTRACTUS.

The validity, obligation, and legal effect of an executory contract of sale entered into in New York by a foreign copartnership would be determined by the lex loci contractus, without giving any effect to foreign laws in derogation of the contracts or prejudicial to the rights of citizens.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 2, 153; Dec. Dig. ☞55.]

Action by Richards & Company, Incorporated, against Leo Wreschner and others, doing business under the name and style of Beer, Sondheimer & Company, and Beer, Sondheimer & Company, American Branch. Judgment for plaintiff.

Roger Sherman, of New York City, for plaintiff.

Hornblower, Miller, Potter & Earle, of New York City (Sherwood E. Hall, of New York City, of counsel), for defendants.

WEEKS, J. [1] This case presents the interesting question of whether or not the defense of impossibility of performance, which is claimed to have arisen from European war conditions, will excuse the obligor, a German copartnership, from the breach of an unconditional contract made in New York and providing for performance in this country. The plaintiff claims damage in the sum of $3,460.80 by reason of defendants' failure to deliver the last two shipments pursuant to the following contract:

"Office, 81 Fulton Street, New York, January 28, 1914. Beer, Sondheimer & Company, New York, agree to sell, and Richards & Company, Boston, Mass., agree to buy, one hundred twenty (120) tons (2,240 pounds each) Belgium H. H. antimony for shipment from Europe at the rate of fifteen (15) tons per month during the months of February to September, 1914, inclusive, at five and thirty-five hundredths (5.35c.) cents per pounds; delivered c. i. f. New York or Boston, Buyers' option. Terms: Cash against documents on arrival of vessel. No arrival, no sale. Buyers to be advised name (and) or names of vessels while antimony is still afloat. C. S. Trench & Co., C. J. Trench, Brokers. O. K. A. T. W. Accepted: Beer, Sondheimer & Co., American Branch. (Signature illegible in original.) (Sellers' signature.)"

The controversy is submitted upon a stipulation between the parties which may be summarized as follows: That if plaintiff recovers, the

amount due is conceded to be the amount demanded in the complaint; that the subject-matter of the contract, Belgium H. H. antimony, is a specific and well-known brand manufactured only by the Compagnie Metallurgique de Ia Companie, a Belgian corporation, having a factory at Beerse, Belgium, and that said antimony is a particular product of that particular factory, and that all production of Belgian H. H. antimony ceased because of the closing down of this factory under stress of the German invasion of Belgium, and that since July 31, 1914, all exportation of antimony over the frontier of the German empire was forbidden by the German government.

Although the parties have further stipulated that defendants could present proof that they had no warehouses for the storage of this antimony and that they supplied their customers by direct shipments from the said factory or from their principal office at Frankfort-on-Main, Germany, and that by reason of the declaration of war between Germany and Belgium on or about July 31, 1914, the defendants became enemies of the Kingdom of Belgium, and commercial intercourse by them with the inhabitants or industries thereof became, under the laws of the German government, illegal and prohibited, and further performance of the contract by the defendants was rendered impossible, it does not appear that the defendants could not have guarded against the very contingency which has arisen by providing themselves with a sufficient supply of antimony to make deliveries during the last two months of the contract by shipments from some port in Europe, nor does it appear that they could not have procured the antimony from a warehouse in some nonbelligerent country of Europe, and it is obvious that the defendants were improvident in entering into a contract of this kind without inserting a condition covering the interference of war, strikes or other causes beyond their control.

The most recent statement of the law applicable to this case is to be found in Cameron-Hawn Realty Co. v. City of Albany, 207 N. Y. 377, 381, 101 N. E. 162, 163 (49 L. R. A. [N. S.] 922), as follows:

"It is a well-settled rule of law that a party must fulfill his contractual obligations. Fraud or mutual mistake, or the fraud of one party and the mistake of the other, or an inadvertence induced by the one party and not negligence on the part of the other, may relieve from an expressed agreement, and an act of God or the law or the interfering or preventive act of the other party may free one from the performance of it; but if what is agreed to be done is possible and lawful the obligation or performance must be met. Difficulty or improbability of accomplishing the stipulated undertaking will not avail the obligor. It must be shown that the thing cannot by any means be effected. Nothing short of this will excuse nonperformance. The courts will not consider the hardship or the expense or the loss to the one party or the meagerness or the uselessness of the result to the other. They will neither make nor modify contracts nor dispense with their performance. When a party by his own contract creates a duty or charge upon himself, he is bound to a possible performance of it, because he promised it, and did not shield himself by proper conditions or qualifications. Harmony v. Bingham, 12 N. Y. 99 [62 Am. Dec. 142]; Tompkins v. Dudley, 25 N. Y. 272 [82 Am. Dec. 349]; Ward v. H. R. Bldg. Co., 125 N. Y. 230 [26 N. E. 256]; Soley & Sons v. Jones, 208 Mass. 561 [95 N. E. 94]; Rowe v. Peabody, 207 Mass. 226 [93 N. E. 604]; School District No. 1 v. Dauchy, 25 Conn. 530 [68 Am. Dec. 371]; School Trustees of Trenton v. Bennett, 27 N. J. Law, 513 [72 Am. Dec. 373]. There are classes of cases in which this principle is not applied. It is not

applied to executory contracts for personal services (Wolfe v. Howes, 20 N. Y. 197 [75 Am. Dec. 388]; Spalding v. Rosa, 71 N. Y. 40 [27 Am. Rep. 7]), nor for the sale of specific chattels (Dexter v. Norton, 47 N. Y. 62 [7 Am. Rep. 415]; Dolan v. Rodgers, 149 N. Y. 489 [44 N. E. 167]), nor for the use of particular buildings (Taylor v. Caldwell, 3 Best & Smith, 826). There is in the nature of contracts of those classes an implied condition that, if the person or thing shall not be in existence at the time stipulated for performance, it shall not be required. And in the case of every contract there is an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part. Patterson v. Meyerhofer, 204 N. Y. 96 [97 N. E. 472]."

The claim of the defendants that they are excused from performance because of the interference with the source of supply or with the opportunity for shipment by reason of the existence of a state of war between Germany and Belgium, and also because of the subsequent illegality of shipment by reason of the proclamation of the German government prohibiting the exportation of the merchandise contracted for, cannot be sustained.

[2] It is well settled that impossibility due to a foreign war is no excuse. Barker v. Hodgson, 3 M. & S. 267; Spence v. Chodwick, 10 Q. B. 517; Kirk v. Gibbs, 1 H. & N. 810; Clifford v. Watts, L. R. 5 C. P. 577; Cunningham v. Dunn, 3 C. P. D. 443; Jacobs v. Credit Lyonnais, 12 Q. B. D. 589; Ashmore v. Cox, 1899, 1 Q. B. 436; Tweedie Trading Co. v. McDonald Co. (D. C.) 114 Fed. 985; Beebe v. Johnson, 19 Wend. 500, 32 Am. Dec. 518.

In Ashmore v. Cox (1899, supra), the defendants agreed to sell to the plaintiffs 250 bales of Manila hemp at a stipulated price, to be shipped by "sailer or sailers" from a port in the Philippines between specified dates. The outbreak of the Spanish-American War prevented shipment between those dates, but defendant made a subsequent shipment by steamer, which was tendered, and, as the court held, properly refused; Lord Russell, Chief Justice, saying:

"On behalf of the defendants it was also contended that they were excused from the fulfillment of the contract on the ground of impossibility of performance of it. This contention was divided into two heads: First, it was said that it was an implied condition of the contract, and therefore not depending upon the express words of the contract, that it should be possible to ship between the named dates by sailer or sailers. In support of that contention one or two cases were cited, the principal being Howell v. Coupland, 1 Q. B. D. 258. In my judgment that case is no authority for the proposition here contended for; it turned upon the construction of the contract in that case. * * * Here the stipulations are that the defendants shall sell 250 bales of hemp; that the shipment shall be made from the Philippine Islands; that it shall be made by sailer or sailers; that it shall be made between the named dates; and that the declaration shall be made in the manner provided by the contract. The defendants have taken upon themselves the absolute responsibility of being able to make a declaration complying with the contract, and appropriating to the contract 250 bales of the commodity shipped by sailer or sailers between May 1 and July 1, 1898. They have taken upon themselves (subject to the concluding clause of the contract) the responsibility that those events shall take place, or that they will pay damages if from any cause they are prevented from carrying out the contract. I therefore hold that there was no such implied condition."

In Jacobs v. Credit Lyonnais (1884, supra), where the action was upon a contract for the shipment of esparto from Algiers for delivery

in England, which was prevented by a war in Algiers, it was held that although a war was a defense under the French law it did not apply to an English contract.

In Tweedie Trading Co. v. McDonald Co., supra, libelant entered into a contract in the United States to make four trips with its steamship from Barbadoes to Colon to transport laborers, but after two trips had been made a regulation of the colonial government of Barbadoes was promulgated forbidding the future embarkation of laborers, by reason of which defendant was unable to furnish any more for transportation, and it was held that such embargo did not constitute a defense to an action to recover the hire of the ship for the remaining voyages at the contract price; the court saying:

"The question really is: Do the legal acts of the agents of a foreign government, which prevent the full performance of a contract of this character, control the rights of the parties? Contracting parties are subject to the contingencies of changes in their own law, and liable to have the execution of their contracts prevented thereby; but it is on the ground of illegality, not of impossibility. Prevention by the law of a foreign country is not usually deemed an excuse, when the act which was contemplated by the contract was valid in view of the law of the place where it was made * * * and a fortiori when it was also then valid at the place of performance."

In Barker v. Hodgson, supra, where the defendant was unable to send a cargo by reason of an embargo imposed by the port authorities due to the breaking out of a pestilence at Gibraltar, Lord Ellenborough said:

"If the performance of this covenant had been rendered unlawful by the government of this country, the contract would have been dissolved on both sides, and this defendant inasmuch as he had been thus compelled to abandon his contract, would have been excused for nonperformance of it and not liable to damages. But if, in consequence of events which happen at a foreign port, the freighter is prevented from furnishing a loading there, which he has contracted to furnish, the contract is neither dissolved nor is he excused for not performing it, but must answer in damages."

So, also, the refusal of the authorities to permit a vessel to receive a cargo on board has been held not to excuse an absolute engagement to take it. Holyoke v. Depew, 2 Ben. 334, Fed. Cas. No. 6,652.

And in the case of Spence v. Chodwick, supra, it was said that seizure and confiscation of goods in transit on board a ship in a foreign port on the ground that they were contraband goods would not relieve a carrier from an express contract to carry and deliver them.

Again, in Hore v. Whitmore, 2 Cowp. 784, the court held that an embargo would not relieve from an express warranty that a ship would sail on or before a certain day, and in Atkinson v. Ritchie, 10 East. 530, it was held that a hostile embargo did not relieve from liability for breach of an express contract to load a vessel.

[3] Under the provision in the contract of "no arrival, no sale," title remained in the seller until delivery. Stein v. Robertson, 167 N. Y. 101, 60 N. E. 329.

[4] The contract was entered into in New York and was to be performed in this country, and the nature, validity, obligation, and legal effect of the contract must be determined by the lex loci contractus,

and effect will not be given to foreign laws in derogation of the contracts or prejudicial to the rights of citizens. Dyke v. Erie Ry., 45 N. Y., 113, 6 Am. Rep. 43.

It follows that there must be judgment for the plaintiff for $3,460.- 80, with interest, as demanded in the complaint. Submit findings and decision.