**WALLACE STUDIOS, Inc., Appellant,**

v.

**BROCHSTEIN'S, Inc., Appellee.**

No. 5092.

Court of Civil Appeals of Texas.

Beaumont.

Nov. 15, 1956.

Rehearing Denied Jan. 9, 1957.

Sutton, Steib & Barr, San Angelo, for appellant.

Sam W. Levy and Sidney Wright, Houston, for appellee.

WALKER, Justice.

Brochstein's, Inc., as seller, sued Wallace Studios, Inc., as buyer, upon a written contract to recover the balance of the purchase price of certain chattels, with other items incidental to this demand, and to foreclose a lien on these goods which the contract provided in seller's favor. It is not necessary to state the pleas of the defendant buyer. The trial court rendered judgment in behalf of the plaintiff seller for the balance of the price alleged to be owing and for foreclosure of the lien, and from this judgment the defendant buyer has appealed.

The contract is not merey one for the sale of chattels. The plaintiff was engaged in the business of designing and manufacturing fixtures and articles to be used in mercantile and other establishments, maintaining a factory in Houston for this purpose, and the contract with the defendant buyer was one of a number which the plaintiff seller had made with business concerns to stock with fixtures a certain store for the sale of merchandise to the public which was to be established by a corporation named Mays of Houston, Inc. This store was to be in Houston. It was to be operated in the name of Mays and was to occupy the first three floors of a certain building. It was to be a department store and some of the departments were to be occupied and conducted by independent concerns to whom Mays had granted the privilege of so doing, under agreements between Mays and these concerns. The defendant was one of these concerns and was to operate a photographer's shop in the store. The plaintiff seller made agreements with Mays and with the various concerns which were to operate departments in the store to plan the location and internal arrangement of the departments and of the fixtures to be used in the store and to design and manufacture or provide these fixtures, and the contract in suit was one, or a part of one, of these agreements. The plaintiff seller put in evidence plaintiff's Exhibit 2, the drawing which was the floor plan of the defendant's shop, or department, showing among other things the location and appearance of various fixtures, and the defendant put in evidence defendant's Exhibit 1, the drawing which was the plan of

the entire second floor of the store. Both of these drawings were made by the plaintiff. In the list of goods which is a part of the contract, reference is made to plans of these articles but these were not proved.

According to defendant's Exhibit 1, the defendant's shop was to be in the northwest corner of the second floor of the store, and the plaintiff seller's vice president estimated the area of the shop as about 2% of the area of the floor.

The plaintiff seller knew at least the general nature of the agreement between defendant buyer and Mays and that the right of the defendant buyer to occupy the space set aside for it by the floor plan we have referred to depended on Mays' right to occupy the store building, and the plaintiff thought that Mays had a lease on this building. We note, for instance, in addition to all the circumstances we have listed, that plaintiff's vice president who made the contract with defendant testified that he knew, when the contract was made, that Mays had a lease from the owner of the building, that defendant buyer had an arrangement for a sublease from Mays, and that whether defendant buyer could use that space depended on whether or not Mays retained their lease.

The contract between the plaintiff and defendant was dated December 7, 1951. Its meaning is uncertain and the construction which the parties have placed on it has materially assisted us in interpreting it. So construed, this contract obligated the plaintiff to provide the fixtures which the defendant was to use in its shop, or department, on the second floor of the store and to install these fixtures in this shop, all as the plans made by the plaintiff located and marked out that shop and provided designs for these fixtures. For all of these acts to be done by the plaintiff seller, the defendant buyer was to pay to the plaintiff the unitary sum of $3,219.60 in two installments. The first of these accrued on December 15th, one week after the date of the contract. The defendant buyer con-

tends that the second installment became due when the fixtures had been installed. The plaintiff seller does not deny that this construction is right, and on consideration of the entire contract we agree with the defendant.

The description of the goods, typewritten, is: "fixtures per revised plan, elevations and itemized list." Plaintiff's vice president said that "plan" meant the numbered plans referred to on the "list", of goods which was a part of the contract. These numbered plans were not put in evidence, as we have stated; we infer from the vice president's testimony that they were drawings and specifications of the various items which defendant was to buy. "Elevations", then, must refer to plaintiff's Exhibit 2, the floor plan of defendant's shop, which the plaintiff's vice president said was "the plan and elevation of Wallace Studios at Mays of Houston", and perhaps to defendant's Exhibit 1 which was the floor plan of the second floor of the store, where the defendant's shop was to be. We note that on plaintiff's Exhibit 2, various parts of this plat are entitled "elevations". This being the meaning of "elevations", the word must have been intended to guide the plaintiff in installing the goods; otherwise its use seems unnecessary.

Following the description are these typewritten statements:

"Total Price $3,219.60 (Three Thousand Two Hundred Nineteen and 60/100 dollars)

"Terms: $1,000.00 December 15th—Balance when completed.

"F.O.B. Delivered and installed."

We think that the words "balance when completed" should be referred to the description and thus to "elevations" and should be given the meaning "balance when completed according to elevations"; and these "elevations", we have concluded, were the floor plans of defendant's shop and perhaps that of the floor on which the

shop was to be. Bearing in mind, then, that plaintiff was to install the goods and had included a charge for this service in the "total price" stated above, the words "balance when completed according to elevations" would seem to mean payment when the goods had been installed as said "elevations" provided. This also seems to be implied by the words "F.O.B. Delivered and installed". Ordinarily, the letters "F.O.B." mean "free on board" and signify that the goods are to be put in place by the seller free of expense to the buyer. See Williston on Sales, Rev.Ed., Sec. 280 et seq.; "Words & Phrases", Vol. 42, Texas Digest. Of course this meaning could not have been intended in the contract in suit because the plaintiff undeniably did make a charge for installing the goods; so, if "F.O.B. Delivered and installed" has any meaning it must be one affixed by the parties, and the only meaning we can think of these words having, apart from one perhaps concerning the place of delivery, is that the buyer was to be at no expense (in addition to the first installment) until delivery and installation had been made, thus implying payment of the second installment when the goods have been installed. This meaning, as we have stated, is consistent with our interpretation of the words "balance when completed".

To repeat, then, we construe the contract as providing for payment of the second installment when the goods had been installed. The contract does not state what the price of the goods was nor the sum charged for installation, and it does not provide any method by which to determine these sums. As a consequence of objections made by the defendant buyer, the plaintiff proved the cost of installation by opinion evidence.

Of the contract price, only the $1,000 installment has been paid.

The fixtures did not exist when the contract was made. It was contemplated by the parties that the plaintiff would manufacture these fixtures, and this the plaintiff did, at its factory in Houston, but these fixtures were not completed until May 21, 1952, more than four months after the first installment accrued.

None of the goods which the contract provided for were installed by the plaintiff, and the reason has not been clearly shown. The plaintiff installed a substantial amount, almost one half, of the fixtures to be used in the store and then stopped. According to the plaintiff's president, some fixtures had been installed on the 2nd floor, on which defendant's shop was to be, before the plaintiff stopped work "and we were to follow through in installing the fixtures for (defendant buyer) when we got to that point on the floor." According to testimony of plaintiff's vice president on pages 9 and 10 of the statement of facts, the fixtures in suit must have been complete when plaintiff stopped work.

The defendant did not cause the plaintiff to stop work in the store. This was caused by others. Plaintiff's president said that "other lessees", meaning other concerns which, like plaintiff, were to operate departments in the store, directed plaintiff to stop the installation of their fixtures, and that the plaintiff did so and ended its work in the store. Plaintiff's vice president testified that the fixtures in suit were not installed because "we had received notification from the owners to stop installation because there was some difficulty they were having at the time financially." The defendant states in its brief, and the plaintiff agrees with the statement, that "(plaintiff) was stopped in some manner by the owners of the building. Mays either lost its lease with the owners of the building or because of some financial difficulty such lease was never favorably consummated." Defendant buyer's right to occupy space in, and to operate its shop in, the store terminated with the loss of Mays' own right to occupy the store.

It does not appear that the plaintiff was in any way responsible for the failure of Mays' enterprise; and it is a reasonable

inference from the testimony of the plaintiff's vice president that plaintiff's only connection with the store was its contracts for fixtures to be used in the store.

The fixtures are still in the plaintiff's possession, at plaintiff's factory where they were made, and have no value in money because they were designed for use in the particular place and space in the store allotted to the defendant. Plaintiff's president testified that defendant had been requested to take delivery of the fixtures and that defendant had refused to do so, but he did not say when request and refusal were made; and since plaintiff was to install, we infer that the request was not made until after plaintiff stopped work in the store.

Plaintiff's president also testified that the fixtures in suit complied with the plans and specifications, and this the defendant does not deny.

Plaintiff's vice president testified that the reasonable cost of installing the fixtures would have been 10% of the contract price. This sum amounted to $321.96 and the trial court deducted it and the $1,000 paid by defendant to determine the balance of the purchase price of the goods.

The actual cost of the fixtures was $1,698.31.

Plaintiff makes no claim of fraud or misrepresentation by the defendant concerning any matter, and plaintiff has not proved any warranty in fact or promise by defendant about the continued existence of defendant's right to operate the shop in the store, although charging the defendant with a constructive warranty concerning this matter.

### Opinion

The defendant argues that plaintiff's obligation to perform was entire, not divisible, and that plaintiff can not recover on the contract because plaintiff did not perform a material part of said contract, to-wit, the installation of the fixtures. Defendant argues further that the subject matter of the contract was destroyed when the failure of Mays' lease ended the defendant's right to space in the store, and that plaintiff's rights, if any the plaintiff has, are in quantum meruit.

The plaintiff argues that the parties never intended the plaintiff to risk the loss of the sum required to manufacture the goods in suit; that defendant's agreement for space in the store being dependent upon a third person, it was the defendant and not the plaintiff who took the risk of the third person's performance and the risk of the possibility that defendant might lose its right to space in the store; and that the defendant, as a sub-contractor or sub-lessee, impliedly warranted to the plaintiff that the place in which the parties intended the fixtures to be installed would be available to the plaintiff when the time came to install the goods.

We make the following holdings concerning these arguments and the points of error to which they relate:

1. The first matter to be determined is the meaning of the contract, and we have set out our construction of this instrument.

2. The plaintiff has not sought a recovery on any ground of quantum meruit or for the value of the goods, and nothing can be awarded the plaintiff on this appeal on such theories of recovery.

3. The defendant's promise, as we have construed it, was to pay the plaintiff the balance of the price when the fixtures were installed, and so the installation, unless excused, had to be made before the balance of the price became due. The promise to install was material and performance thereof, according to the evidence on this appeal, was not a divisible part of plaintiff's obligation.

It became impossible for the plaintiff to perform its promise to install, without any fault of the plaintiff, but the plaintiff knew when it made the contract with the defendant that the defendant's right to

space in the store was derived from and was dependent upon the right of a third person, the corporation Mays of Houston, Inc., to occupy the store, yet the plaintiff, knowing this, made a promise to defendant, absolute in terms, to install the goods in the space allotted to the defendant in the store without requiring any promise from defendant that the space would be available when plaintiff was ready to use it, or any other promise or agreement by the defendant concerning the situation which has arisen. Too, there is no claim that plaintiff was misled in any way by anybody or that plaintiff could not, by investigation, have learned any fact material to its performance in the future. It would seem, then, that the plaintiff in fact assumed at least as much of the risk that defendant's space in the store would be available as was assumed by the defendant.

In Embry v. Lewis, Tex.Civ.App., 19 S. W.2d 87, at page 88, the court said: "Where the impossibility arises after the contract is made and the defendant had knowledge of facts and circumstances from which it might reasonably have been foreseen, but makes no provision for such contingency, he assumes the risk of the happening of the impossibility, and cannot defend on that ground." The court cites and is supported by Northern Pacific R. Co. v. American Trading Company, 195 U. S. 439, 25 S.Ct. 84, 49 L.Ed. 269, at page 281, and also see: Soley & Sons v. Jones, 208 Mass. 561, 95 N.E. 94, and Shore Investment Company v. Hotel Trinidad, 158 Fla. 682, 29 So.2d 696. Whether this rule of decision is to be applied literally against the plaintiff is not now in question, but it is deemed to be enough, certainly when other circumstances are considered, to show that the defendant was not charged with a constructive warranty or a warranty implied in fact that the defendant's space in the store would be available when the plaintiff came to install the goods. The circumstances referred to are these: the defendant was to operate a photographic shop which would occupy only about 2% of one floor in a store which was to occupy three floors of a building and was to consist of a number of other departments, to be conducted by one primarily responsible for the entire enterprise, Mays of Houston, Inc., and by other concerns working under Mays, none of whom the defendant controlled. The plaintiff could not reasonably have expected the defendant to become responsible for the continued existence of such an enterprise, as the defendant must have done to keep in effect the rights of Mays and the other concerns to occupy and operate the store.

4. If the plaintiff's performance of its promise to install the fixtures be excused by impossibility (a question we do not decide) the plaintiff's right to recover anything for any of the goods in suit depends upon whether any goods have been delivered to or accepted by the defendant in some way. Thus in Weis v. Devlin, 67 Tex. 507, 3 S. W. 726, 60 Am.Rep. 38, where fire had destroyed a building of the defendant's which the plaintiff had promised to repair, the defendant was held liable for repairs and alterations made by plaintiff before the fire on the ground that defendant had become the owner of these and so should bear the loss. Said the court, 3 S.W. 729: "In the case before us the completion of the work agreed to be done had become impossible from the destruction of the house to be altered and repaired; and the work and material furnished were represented by the alterations and improvements so far as made, which had become the property of the defendant; and it would seem that the case is one in which the maxim, res perit domino, may find just application." In Binz v. National Supply Company, Tex.Civ.App., 105 S.W. 543, the court took note of the reason given for this holding in Weis v. Devlin and denied the contractor a recovery for materials which he had brought to the place of work but had not affixed to the realty and which had not been otherwise delivered to or accepted by the purchaser. The promises of

the parties were analogous to those of the parties to this suit. Similar holdings were made by the Supreme Judicial Court of Massachusetts in Young v. City of Chicopee, 186 Mass. 518, 72 N.E. 63, and M. Ahern Co. v. John Bowen Co., 133 N.E.2d 484.

This rule is applicable here under the evidence. The fixtures seem never to have left the plaintiff's factory, for no reason for which the defendant is in any way responsible; there was no actual or constructive delivery to or acceptance by the defendant of the goods or any appropriation of the goods to the defendant to which the defendant agreed.

5. The only fact which might be thought inconsistent with the conclusion just stated or thought to make inapplicable the rule applied in Weis v. Devlin and the decisions cited with that case is the unique quality of the goods, which were usable only in one place. However, the rule of decision usually applied in this state concerning goods to be manufactured by the seller for the buyer requires some delivery to or acceptance by the buyer, some appropriation of the goods to the buyer's use after manufacture to which the buyer has agreed, in order to pass the property in the goods from the seller to the buyer, and gives the seller only a right of action for damages if the buyer refused to accept these goods. See: Gammage v. Alexander, 14 Tex. 414; Tufts v. Lawrence & Co., 77 Tex. 526, 14 S.W. 165; Second Baptist Church v. C. H. Myers & Co., Tex.Civ.App., 193 S.W. 1147. The action here is for the price, not damages, and the circumstances are inconsistent with an intention, implied only from the unique character of the goods, to pass title upon the completion of the goods without a later appropriation. Thus, the parties did not agree upon any price for the goods and the defendant's promise to pay, as we have construed it, is dependent upon installation of the goods and it unquestionably does include the cost of installation. Further, the plaintiff could not install the goods without having control of

them, which implies that plaintiff was to have possession of the goods in order to install them. See particularly: Second Baptist Church v. C. H. Myers & Co., supra. And as we have pointed out, the parties knew the unique character of the goods and the conditional nature of the defendant's right to space in the store, yet if we have correctly construed the contract, plaintiff made no provision for the situation which has come out of these facts. There is, then, no reason why the rule of decision just stated should not be applied. We have inferred that the plaintiff's request that defendant take the goods was not made until after the enterprise failed but, as we have stated, this request was refused and the action is not one for damages.

These conclusions require that the judgment of the trial court be and the same hereby is reversed. The defendant is willing for the plaintiff to have something, although not on a theory on which we can award relief to the plaintiff, and the case has not been fully developed. The cause is therefore remanded to the trial court.